OPINION OF THE COURT
Thomas F. McGowan, J.
Firemen’s Insurance Company of Newark, New Jersey (hereinafter Firemen’s), moves for summary judgment on its declaratory judgment action. Firemen’s is seeking a declaration that it has a lien for no-fault benefits against any settlement or recovery by Thelma and Edward Callahan in their tort action. Defendants in this action, the Callahans, cross-move for summary judgment declaring plaintiff’s lien a nullity.
On December 2,1976, Thelma Callahan was injured as a result of a fall on property owned or controlled by defendants Bowley and/or Freeman and/or Village of Randolph. She had just visited with the Bowleys and had gone to her car parked in the driveway. After having started the *169 engine, and with the motor still running, she stepped out of her car to clear snow from the rear window. It was at this point that, either because of ice or snow or a defect in the driveway, Mrs. Callahan fell and suffered severe injuries.
Pursuant to the no-fault provisions of her automobile insurance policy, Mrs. Callahan has received over $21,000 in benefits. In settlement of the Callahan’s tort claim, the insurers for the Bowleys and Freemans have offered a settlement package of $32,500. This settlement is apparently adequate, considering the liability problems, if and only if Firemen’s is not permitted to assert a lien to recover the no-fault benefits it has paid out.
I.
Subdivision 2 of section 673 of the Insurance Law reads in pertinent part as follows: “2. In any action by or on behalf of a covered person, against a noncovered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcylce may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries shall have a lien against any recovery to the extent of benefits paid or payable by it to the covered person.” The Callahans contend that although Mrs. Callahan was entitled to no-fault benefits, the asserted insurer’s lien is improper because her injuries did not “[arise] out of the use or operation of a motor vehicle,” citing Biette v Baxter (78 AD2d 481). In that case, plaintiff’s injuries were allegedly aggravated by a faulty femoral compression plate in his right leg. The court noted that Baxter, the driver, and Zimmer, the manufacturer and distributor of the plate, were not joint tort-feasors and that the complaint established “separate and distinct causes of action *** arising out of independent and successive wrongs” (supra, p 482). The court held, therefore, that Baxter’s insurer, who had paid the no-fault benefits, was not entitled to a lien on any recovery as against Zimmer.
In Biette, it is not clear from the opinion whether the medical bills and lost wages paid by the insurer were occasioned by the accident alone or whether such bills were a result of the accident and the subsequent aggravation *170 caused by the defective plate. The court drew no distinction between the “arising out of” language contained in subdivision 2 of section 671 of the Insurance Law and section 672 (subd 1, pars [a], [b], [c]) — of the Insurance Law — relating to a claimant’s entitlement to first-party benefits — and that same language as used in subdivision 2 of section 673 of the Insurance Law. It would seem, therefore, that if, in Biette, Zimmer is liable for the aggravation of the injury caused by the plate, and if the insurer is not entitled to a lien because such aggravated injuries did not “arise out of” the operation of the vehicle, then either the insurer had not paid first-party benefits for aggravated injuries occasioned by the plate or the court thought that the insurer had paid such benefits in error.
In Matter of Manhattan & Bronx Surface Tr. Operating Auth. (Gholson) (71 AD2d 1004), the court stated that, for purposes of no-fault, one of the three rules for determining whether the injuries sustained arose out of the use or operation of the insured vehicle is that the vehicle must “produce” the injury. The phrase “proximate cause” has also been used (see Thomas v Travelers Ins. Co., 87 Misc 2d 136, affd 54 AD2d 608). If this formulation is correct, Firemen’s is not entitled to its lien here because it appears that the proximate cause of the injury to Mrs. Callahan was not her use or operation of the vehicle, but rather the hazardous condition of the driveway.
In many instances under the no-fault statute, use or operation of the vehicle by the insured is not the proximate cause of the injuries sustained. For example, in Matter of 20th Century Ins. Co. (Lumbermen’s Mut. Cas. Co.) (80 AD2d 288), Lawrence was injured by an insured vehicle driven by Connors while he was unloading the trunk of his car. The court noted that Lawrence was entitled to no-fault benefits from his insurer. The facts as set forth indicate that the proximate cause of Lawrence’s injuries was the operation of the Connors’ vehicle and not the use of his own.
Assuming, therefore, that a given accident arises within the natural territorial limits of the automobile (see Matter of Manhattan & Bronx Surface Tr. Operating Auth. [Gholson], supra), it should be enough that there be “some nexus” between the use of the insured vehicle and the *171 source of the injuries (see Auto-Owners Ins. Co. v Pridgen, 339 So 2d 1164 [Fla]) and that the accident arise out of the “inherent nature of the automobile as such” (Matter of Manhattan & Bronx Surface Tr. Operating Auth. [Gholson], supra; see, also, Reisinger v Allstate Ins. Co., 58 AD2d 1028, affd 44 NY2d 881; Johnson v Hartford Ins. Co., 100 Misc 2d 367). Where possible, courts will generally opt in favor of ruling for no-fault coverage of an insured (see Johnson v Hartford Ins. Co., supra). To require proximate cause in interpreting the “arising out of” language of subdivision 2 of section 673 of the Insurance Law, would necessitate the same construction of that phrase in sections 671 and 672 of the Insurance Law. Such an interpretation would unduly restrict no-fault coverage and should not, therefore, be adopted.
Thus, in the instant case, the damages for which Mrs. Callahan seeks recovery arose out of her use and operation of the insured vehicle. In any event, however, the insurer had already made this determination and paid the no-fault claim. Mrs. Callahan had accepted the payments. Under such circumstances, she is estopped from contesting the lien on the grounds that her injuries did not arise out of her use of the vehicle (see Pavone v Aetna Cas. & Sur. Co., 91 Misc 2d 658). The cross motion is denied.
II.
On plaintiff’s motion for summary judgment, plaintiff asserts that its lien pursuant to subdivision 2 of section 673 of the Insurance Law should be for the full amount of first-party benefits it has paid out, citing Matter of Granger v Urda (44 NY2d 91). Granger is a case under section 29 of the Workers’ Compensation Law. In holding that the lien under that section is inviolable, the court noted the parallel between the workers’ compensation scheme and the no-fault automobile insurance law (see Matter of Granger v Urda, supra, p 98, n 2).
The two statutes, although similar, are not identical. Moreover, the cost considerations set forth in Granger, which underlie the lien provisions of the workers’ compensation statute, are not necessarily the same as the considerations underlying the no-fault statute. Lastly, the Gran *172 ger court was dealing with the issue of whether the compensation carrier could assert a lien against a claimant’s third-party judgment obtained under the no-fault law, not with the issue of the extent of such lien.
In Matter of Ackerman (Forbes) (66 AD2d 1027), the Fourth Department held that the no-fault insurer may assert a lien against any settlement or recovery obtained in an action by a covered against a noncovered person, but that “a determination must be made as to that portion of the recovery which represents basic economic loss for which the [insured] has received first-party benefits” (supra, p 1027). In making this determination, the court must “[consider] all of the circumstances, including the intention of the parties in making the settlement agreement.” (United States Fid. & Guar. Co. v Stuyvesant Ins. Co., 61 AD2d 1122, 1123.) Arguably the only instance where the insurer would recover the entire amount of no-fault benefits paid is in the situation where the jury finds 100% liability against the third-party tort-feasor, and the insurance is adequate to cover the verdict. If, however, there is some negligence on the part of the insured (as is alleged here) or if the insurance coverage and assets of the insured are inadequate to cover the entire damages or to pay the entire verdict — resulting in a diminished settlement or a limited recovery — the insurer may recover only a portion of the no-fault benefits paid. The insurer stands in the shoes of the insured; it cannot claim a better position.
On the other hand, the insured and the tort-feasors cannot arbitrarily determine between themselves that any settlement is for pain and suffering rather than for items of basic economic loss. To do this would effectively abrogate the statutory lien and would circumvent those provisions of subdivision 2 of section 673 of the Insurance Law requiring insurer or court approval and giving the insurer an independent cause of action for the amount of first-party benefits paid. Here, the Callahans sued for items of basic economic loss (sums expended for medical care and treatment) as well as for damages for pain and suffering. They cannot release that portion of their cause of action without Firemen’s consent. Moreover, any attempt to do so, particularly where defendants have knowledge of the in *173 surer’s claim, would probably be ineffective to extinguish Firemen’s cause of action under subdivision 2 of section 673 of the Insurance Law (cf. Government Employees Ins. Co. v Halfpenny, 103 Misc 2d 128).
Accordingly, defendants’ cross motion is denied and plaintiff’s motion is granted. Plaintiff is entitled to a lien on the proceeds of any settlement obtained by the Callahans. An immediate trial is ordered on the issue of the extent of such lien.